GASKINS, J.
 

 liThe defendant, Yolanda M. Ebarb, appeals from a default judgment finding that she owes the plaintiff, Moore Finance Company, Inc. (“Moore”), $4,667.98 on a promissory note, together with interest, attorney fees and costs. The defendant claims that the plaintiff did not provide sufficient evidence to support the default judgment. For the following reasons, we reverse the trial court judgment.
 

 FACTS
 

 On December 22, 2008, Ms. Ebarb executed a promissory note in favor of Moore for $7,774.75, secured by a mortgage on a 2003 Mitsubishi Eclipse automobile. The term of the loan was 36 months and the interest rate was 28.31 percent per year from May 11, 2010, until one year after contractual maturity, and thereafter at 18 percent per year. The agreement included 25 percent attorney fees in case of default, along with court costs. The total amount due was $11,799 with the initial payment of $327.75 due in February 2009.
 

 On June 28, 2010, Moore filed suit on the promissory note against Ms. Ebarb, alleging that she had failed to make payments on the debt for six months and that the balance of $4,667.98 had become due and payable along with interest, attorney fees and costs. Along with the petition, a copy of the promissory note was filed, as well as a request for admission of facts. The request for admission of facts called upon Ms. Ebarb to admit the following: (1) It is a fact that your outstanding balance on the account is $4,667.98, together with additional interest of 28.31 percent from May 11, 2010, until one year after contractual maturity and thereafter at a rate of 18 |2percent per annum, until paid, and 25 percent attorney’s fees of the aggregate of principle and interest; (2) It is a fact that you applied for and were issued a loan by plaintiff with said loan bearing account #41181; (3) It is a fact that you signed a promiss[o]ry note in favor of plaintiff dated December 22, 2008; (4) It is a fact that interest and attorney’s fees are authorized either as a result of statu[t]e and notice or through your agreement with the creditor.
 

 Also filed with the petition was an affidavit of correctness executed by Denise Raborn, manager of Moore, stating that she had personal knowledge of the account of Ms. Ebarb and that she was competent to testify thereto. She averred as to the amount of the debt, as set forth above, and that the Soldier’s and Sailor’s Civil Relief Act of 1940 did not apply to Ms. Ebarb. Personal service of the suit was made on Ms. Ebarb on July 1, 2010.
 

 Ms. Ebarb did not answer the petition or the request for admission of facts. On July 23, 2010, Moore’s attorney sent a letter to the Bossier Parish Clerk of Court asking that a preliminary default be entered in the matter. The minutes reflect that a preliminary default judgment was entered on July 29, 2010.
 

 On September 24, 2010, Moore filed a supplemental affidavit of correctness of account, executed by Ms. Raborn, adding only that the amount due was on Ms. Ebarb’s Moore Finance Company, Inc. account #41181, and that the defendant’s balance was currently subject to a credit of $.00. Moore also filed a certificate from the clerk of court’s office setting |sforth the date the suit on the promissory note was filed; that Ms. Ebarb received personal service on July 1, 2010; that no answer or other pleading was filed by the defendant; that a preliminary default was entered on July 29, 2010; that on September 24, 2010, Moore submitted to the court the purport
 
 *859
 
 ed proof required by law, together with the original and three copies of the proposed judgment; and that the plaintiffs submission and the entire record was submitted to the trial court judge on September 24, 2010.
 

 The default judgment was signed by the trial court judge on September 27, 2010, in favor of Moore for $4,667.98, together with 28.31 percent interest from May 11, 2010, until one year after contractual maturity and thereafter at 18 percent per year until paid, and 25 percent attorney fees and all costs. Ms. Ebarb appealed devolutively.
 

 SUFFICIENCY OF THE EVIDENCE
 

 On appeal, Ms. Ebarb claims that the trial court erred in granting a default judgment in this matter. She asserts that the affidavits of correctness are insufficient to make a
 
 prima facie
 
 showing necessary to support the default judgment. This argument has merit.
 

 In reviewing default judgments, the appellate court is restricted to determining the sufficiency of the evidence offered in support of the judgment under the manifest error standard.
 
 Ballis v. Barnette,
 
 44,751 (La.App.2d Cir.9/23/09), 23 So.3d 960. When a default judgment recites that the plaintiff has produced due proof in support of his demand and that the law and evidence favor the plaintiff and are against the defendant, there is a presumption that the default judgment has been rendered upon sufficient ^evidence to establish a
 
 prima facie
 
 case and is correct, and the appellant has the burden of overcoming that presumption.
 
 Grevemberg v. G.P.A. Strategic Forecasting Group, Inc.,
 
 2006-0766 (La.App.1st Cir.2/9/07), 959 So.2d 914. On appeal, the record of a default confirmed without a hearing contains the entirety of the evidence before the trial judge and the appellate court is able to determine whether the evidence was competent and sufficient. The presumption is unnecessary and does not attach. See
 
 House of Raeford Farms of Louisiana, L.L.C. v. Osei-Tutu,
 
 41,586 (La.App.2 Cir.11/1/06), 942 So.2d 601.
 

 Regarding default judgments, La. C.C.P. art. 1701 provides in pertinent part:
 

 A. If a defendant in the principal or incidental demand fails to answer within the time prescribed by law, judgment by default may be entered against him. The judgment may be obtained by oral motion in open court or by written motion mailed to the court, either of which shall be entered in the minutes of the court, but the judgment shall consist merely of an entry in the minutes.
 

 The confirmation of default judgments is governed by La. C.C.P. art. 1702, which states in pertinent part:
 

 A. A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case....
 

 [[Image here]]
 

 [B.] (3) When the sum due is on an open account or a promissory note or other negotiable instrument, an affidavit of the correctness thereof shall be prima facie proof. When the demand is based upon a promissory note or other negotiable instrument, no proof of any signature thereon shall be required.
 

 C. In those proceedings in which the sum due is on an open account or a promissory note, ... a hearing in open court shall not be required unless the judge, in his discretion, directs that such a hearing be held....
 

 | ¿Although La. C.C.P. art. 1702(B)(3) states that when the sum due is on an open account or a promissory note or other negotiable instrument, “an affidavit of the correctness thereof shall be pri-ma facie proof,” the jurisprudence holds that, nevertheless, the plaintiff must pres
 
 *860
 
 ent competent evidence that convinces the court that it is probable that he would prevail at trial on the merits.
 
 Ballis v. Barnette, supra.
 
 The affidavit of correctness does away with the necessity of taking testimony in order to establish the validity of the debt. See
 
 Sessions & Fish-man v. Liquid Air Corporation,
 
 616 So.2d 1254 (La.1993).
 

 The required procedure for confirmation of a default judgment without a hearing in open court is set forth in La. C.C.P. art. 1702.1, which provides:
 

 A. When the plaintiff seeks to confirm a default judgment as provided in Article 1702(B)(1) and (C), along with any proof required by law, he or his attorney shall include in an itemized form with the motion and judgment a certification that the suit is on an open account, promissory note, or other negotiable instrument, on a conventional obligation, or on a check dishonored for nonsuffi-cient funds, and that the necessary invoices and affidavit, note and affidavit, or check or certified reproduction thereof are attached. If attorney fees are sought under R.S. 9:2781 or 2782, the attorney shall certify that fact and that a copy of the demand letter and if required, the return receipt showing the date received by the debtor are attached and that the number of days required by R.S. 9:2781(A) or 2782(A), respectively, have elapsed before suit was filed.
 

 B. The certification shall indicate the type of service made on the defendant, the date of service, and the date a preliminary default was entered, and shall also include a certification by the clerk that the record was examined by the clerk, including therein the date of the examination and a statement that no answer or other opposition has been filed.
 

 Ms. Ebarb asserts that the affidavits of correctness speak of an account, but do not mention a promissory note. She contends that the |fiaffidavits do not aver that she failed to pay the note for a period of six months and do not show proof of amicable demand for payment. She claims that the affidavits do not itemize the payments made or show how the total sued upon was calculated. According to Ms. Ebarb, there is no showing in the affidavits that the amount due was calculated in light of La. R.S. 9:3532 and 9:3533, or any other statute defining a consumer transaction.
 
 [1]
 
 She further contends that the affi
 
 *861
 
 davits do not specify why 17May 11, 2010, is the date that defines when the 28.31 percent interest starts. Ms. Ebarb points out that she purchased credit disability insurance as well as credit life insurance and there is no mention in the affidavits of correctness as to the credit given for the premium paid. Ms. Ebarb maintains that the reasoning of this court in
 
 Ballis v. Barnette, supra,
 
 should be applied to find that the affidavits of correctness were insufficient to support the default judgment.
 

 In
 
 Ballis v. Barnette, supra,
 
 this court found that the plaintiff in a suit on a promissory note failed to establish a
 
 prima facie
 
 case because the affidavit of correctness was deficient in several respects. While the plaintiff sued to collect on a promissory note, the affidavit referred to the plaintiffs debt, not on a promissory note, but on an open account. Further, the original loan purported to be in the amount of $45,000; however, the affidavit stated that a total of $135,271.56 was owed. The affidavit of correctness did not provide a
 
 prima facie
 
 explanation of how that amount was reached. Finally, the affidavit stated that attorney fees of 33 1/3 percent were owed, a figure that was not present in the note. This court found that these “glaring inconsistencies undermine the probative value of the affidavit.” The default judgment was reversed and the matter was remanded to the trial court for further proceedings.
 

 While the affidavits of correctness do not specify that the debt in the present case is based upon a promissory note, the unanswered request for |Radmissions of fact does.
 
 [2]
 
 Further, in a
 
 *862
 
 suit on a note, there is no requirement under La. C.C.P. art. 1702.1 for an itemization of payments made on the promissory note or how the total amount sued upon was calculated. Under the terms of the note itself, there was no requirement of putting the defendant in default. The note states:
 

 Should I (or any of us) default under any of the indebtedness, or should I default under any of my obligations under this Agreement, I agree that you shall have the right to accelerate payment of all amounts which I (or any of us) may then owe to you, which will then entitle you to foreclose under this Agreement and cause the Property to be immediately seized and sold under ordinary or executory process, with or without appraisement, in accordance with applicable Louisiana law, whether in terms of court or vacation, without the necessity of further demanding payment from me or notifying me or placing me in default.
 

 However, most notably, while Moore’s petition alleges that Ms. Ebarb had failed to pay the debt for six months, neither the affidavits nor the request for admissions of fact state that she had failed to pay the debt, giving Moore the right to demand immediate payment of the unpaid | abalance. The request for admission of facts asks only for an admission that the defendant has an outstanding balance of $4,667.98. It does not ask the defendant to admit that she had defaulted on the note, giving Moore the right to accelerate payment of all amounts owed. Therefore, Moore failed to establish that it had the right to find the defendant in default, accelerate the payments, and sue for the entire debt under the note. Absent any showing that the debt was due, Moore failed to establish a
 
 prima facie
 
 showing sufficient to support the default judgment. Accordingly, we must reverse the trial court judgment confirming the default.
 
 [3]
 

 CONCLUSION
 

 For the reasons stated above, we find that the plaintiff, Moore Finance Company, Inc., failed to make a
 
 prima facie
 
 showing sufficient to support a default judgment against the defendant, Yolanda M. Ebarb, in this suit on a promissory note. The trial court ruling granting default judgment is reversed and the matter is remanded to the trial court for further proceedings. All costs in this court are assessed against the plaintiff.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . La. R.S. 9:3532 provides:
 

 A. Upon prepayment in full of a precomputed consumer credit transaction, the extender of credit shall refund unearned loan finance charges or credit service charges and such refund shall represent at least as great a proportion of the loan finance charge or credit service charge after first deducting from such charge a prepayment charge of not more than twenty-five dollars as the sum of the monthly time balances beginning one month after the month in which prepayment is made, bears to the sum of all the monthly time balances under the schedule of payments in the contract; this method of rebate upon prepayment is commonly referred to as the “Rule of 78’s” or the "Sum of Digits” rebate method. If more than one-half of the term of the installment contract has elapsed, the rebate shall be computed without deducting a prepayment charge. For the purposes of rebate upon prepayment, deferral charges are not required to be rebated. No rebate less than one dollar, or to the extent provided for by federal law is required.
 

 B. (1) There is no requirement that prepaid finance charges be rebated upon prepayment in full of a simple interest transaction prior to maturity, provided that all of the following conditions are satisfied:
 

 (a) The original amount financed under the transaction was ten thousand dollars or more.
 

 (b) The original scheduled term of the transaction was thirty-six months or longer.
 

 (c) Prepaid finance charges assessed under the transaction did not exceed five percent
 
 *861
 
 of the original amount financed or amount deferred.
 

 (2) Where any one or more of the foregoing conditions are not satisfied, prepaid finance charges shall be subject to rebate upon prepayment in full of a simple interest transaction under the same method in Subsection A of this Section.
 

 C. Compliance with the provisions of this Section shall constitute compliance with the provisions of R.S. 9:3519.
 

 La. R.S. 9:3533 states:
 

 Except as provided in R.S. 9:3527, if the maturity of a consumer credit transaction is accelerated for any reason and suit is filed, the obligation shall be credited with the same rebate required under R.S. 9:3532(A) or (B), as applicable, as if prepayment in full had been made as of the date the maturity of the obligation is accelerated at the creditor’s election, except that any credit life insurance and health and accident insurance in force at such time shall not be rebated until payment is made in full; thereafter the obligation sued upon shall be deemed to bear a loan finance charge or credit service charge on the amount due at the annualized rate previously agreed to by the consumer until the transaction is paid in full.
 

 [2]
 

 . A party may serve upon any other party a written request for the admission, for purposes of the pending actiqn only, of the truth of any matters within the scope of La. C.C.P. arts. 1422 through 1425 (dealing with discovery), set forth in the request or of the truth of any relevant matters of fact, including the genuineness of any documents described in the request. La. C.C.P. art. 1466. Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 15 days after the service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or his attorney. La. C.C.P. art. 1467. Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. La. C.C.P. art. 1468.
 

 Admissions may be used to establish uncon-tradicted facts or controversial issues which constitute the crux of the matter in litigation.
 
 Tandy v. Pecan Shoppe of Minden, Inc.,
 
 34,578 (La.App.2d Cir.4/4/01), 785 So.2d 111. See also
 
 Jie v. Certified Lloyds Plan,
 
 34,545 (La.App.2d Cir.4/4/01), 785 So.2d 118;
 
 Remondet v. Reserve National Insurance Company,
 
 433 So.2d 792 (La.App. 5th Cir. 1983),
 
 writ denied,
 
 
 *862
 
 441 So.2d 216 (La.1983). When the party receiving the request for admissions fails to respond to the request by any means, the fact is deemed admitted.
 
 Tandy v. Pecan Shoppe of Minden, Inc., supra.
 
 See also
 
 Hoskins v. Caplis,
 
 431 So.2d 846 (La.App. 2d Cir. 1983);
 
 Dan-Cin Construction Company, Inc. v. Thrasher,
 
 2008-1552 (La.App. 1st Cir.2/13/09), 9 So.3d 205.
 

 [3]
 

 . This court holds that strict compliance with La. C.C.P. art. 1702.1 is not fatal error as long as each element of proof necessary to meet the codal requirements for confirmation of a default without a hearing is contained in the record. See
 
 Ruston State Bank & Trust Company v. Streeter,
 
 545 So.2d 1255 (La.App. 2d Cir.1989). However, we caution that close adherence to the procedure set forth in La. C.C.P. art. 1702.1 for providing the necessary elements of proof is the better practice.